IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| ANDRE BOOZE, | * |
| Plaintiff, | * |
|  | * |
| v. | * |
|  | *     Civil No. 21-786-BAH |
| UNITED STATES POSTAL | |
| SERVICE ET AL., | * |
| Defendants. | * |

\*   \*   \*   \*   \*   \*   \*   .\*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff Andre Booze ("Booze" or "Plaintiff") brought suit against Doug Tulino, the acting United States Postmaster General, and the United States Postal Service (collectively "Defendants")[1] alleging failure to accommodate (Count I), disability discrimination (Count II), and retaliation (Count III) under the Rehabilitation Act, 29 U.S.C. § 791 et seq. ECF 24.[2] Pending before the Court is Defendants' motion for summary judgment. ECF 85. Booze filed an opposition, ECF 90, and Defendants filed a reply, ECF 93. All filings include memoranda of law and exhibits.[3] The Court has reviewed all relevant filings and finds that no hearing is necessary.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), a public officer's successor is automatically substituted as a party. Accordingly, Louis DeJoy, former United States Postmaster General, is automatically substituted for Doug Tulino as the defendant in this action. The Clerk shall be directed to update the docket accordingly.

[2] Booze's original complaint is docketed at ECF 1, and his first amended complaint is docketed at .ECF 4.

[3] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

*See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Defendants' motion for summary judgment is **GRANTED**.

## I.　BACKGROUND

### A.　Factual Background

Booze was previously diagnosed as prediabetic.[4] *See* ECF 90-2, at 2; ECF 85-7, at 5, 17:2–11. As a result of his diagnosis, Booze's physician instructed him to work no more than 50 hours per week and no more than 5 days per week. *See* ECF 90-2, at 2.

At all times relevant to this litigation, Booze was employed by the United States Postal Service ("USPS") as a customer services supervisor at the Rockville Carrier Annex in Rockville, Maryland. ECF 85-2, at 4; ECF 85-7, at 3, 9:22–10:16, 11:18–20, at 13, 49:17–24. Booze worked as an "EAS-17 non-bargaining Special Exempt employee." ECF 85-3 (declaration of Diane M. Shearer), at 4 ¶ 11. That meant that Booze was a "career employee[]" who was "exempt from the Fair Labor Standards Act" and was "eligible for additional pay" in his role only if he was "authorized to work over 8.5 hours on a scheduled day or any hours on a non-scheduled day." *Id.* ¶ 12. Booze's direct supervisor at the time was Rhonda Williams ("Williams"), the station manager. ECF 85-7, at 3, 12:3–15. Gabriel Hamilton ("Hamilton") was Williams' supervisor, and he was the postmaster of Rockville's USPS installation. ECF 85-2, at 7; ECF 85-7, at 3, 12:7–10. Booze stated that "at least three other people" held the same position as Booze during the time frame relevant to this litigation. ECF 85-7, at 4, 13:24–14:7.

---

[4] Although there was some question about whether Booze also advanced his claims with respect to generalized anxiety at an earlier stage of litigation, *see, e.g.*, ECF 85-8, at 7, Booze's prediabetic diagnosis appears to be the only disability which he bases his Rehabilitation Act claims on at the summary judgment stage. Defendants do not appear to dispute that Booze was diagnosed as prediabetic and had that disability at all times relevant to this litigation. *See* ECF 85-1, at 10.

According to Booze, Williams knew about Booze's prediabetic diagnosis in late 2018. *Id.* at 8–9, 31:25–33:2. Sometime thereafter, Booze provided Williams with a doctor's note "letting her know that [Booze] could only work about 50 hours a week" and five days a week. *Id.* at 9, 33:3–12; *see also* ECF 85-2, at 5. Booze may have submitted that letter to his supervisor on several occasions. *See* ECF 90-3, at 2. In a July 16, 2020 email to Kay Hunter ("Hunter"), a human resources manager with USPS, Williams wrote that Booze's "medical letter states he need[s] to eat properly, get proper rest and exercise, this is the same letter that Mr. Booze ha[s] been submitting since January 2018. As I read the medical letter, that is what every human being need[s]. . . . Mr. Booze use[s] this medi[c]al letter for a reason not to work this all came about when I addressed Mr. Booze about his performance." *Id.* at 2–3 (alterations added due to errors in original).

USPS granted Booze a 50-hour time restriction accommodation. *See* ECF 85-2, at 5. USPS uses the Postal Service Time and Attendance Collection System ("TACS") to generate work hour totals. ECF 85-3, at 2 ¶ 7. Postal Service pay periods begin on Saturday and end on Friday. *Id.* at 3 ¶ 8. TACS code sheets reflect employees' hours worked during these pay periods. *See id.* TACS code 052 indicates hours worked in a specific week at base pay, and other codes indicate "Premium" hours, or hours worked during which an additional amount is added to a USPS employee's base pay. *See id.* at 2–3 ¶ 7, at 3 ¶ 8. Booze's hours were tracked using this system. *See, e.g.*, ECF 85-4, at 37. According to Diane M. Shearer ("Shearer"), a Time and Attendance Compliance Specialist for USPS familiar with TACS, Booze was never recorded working for more than 50 hours in a work week between May 1, 2020 and November 1, 2020. *Id.* at 1–2 ¶¶ 2–3, ¶ 5.

Although Booze acknowledges USPS granted Booze that accommodation, Booze argues that USPS "did so in a purposefully inconvenient way so as to waste Mr. Booze's unpaid personal

time." ECF 90, at 2. Specifically, Booze contends that he was required to take two-hour lunch breaks during his Sunday shifts in a way that abused his personal time. *See* ECF 90, at 6. Although Booze acknowledged he ultimately chose how to spend his lunch break, Booze stated that he "was pretty much forced to go home for [his] break . . . . I would have to travel back home and then come back to work." ECF 85-7, at 12, 48:8–16; *id.* at 14, 56:7–8 ("I'm not required to go home, no, because a lunch break is pretty much ours . . . ."). Booze's commute from work to his house was "[a]bout 15 to 20 minutes," meaning there was an additional 30- to 40-minute commute time in the middle of Booze's work day when he had two-hour lunches.[5] *Id.* at 12–13, 48:20–49:2. According to Shearer's review of Booze's TACS hours, Booze took a two-hour lunch eight times. ECF 85-3, at 3 ¶ 9; *see also id.* at 3–4 ¶ 10 (noting that "TACS code 'OL' means 'out-for-lunch' and denotes when an employee clocks out for their lunch break" and "TACS code 'IL' means 'in-from-lunch' and denotes when an employee is clocking back in from lunch").[6]

On June 16, 2020, Booze, through his National Association of Postal Supervisors ("NAPS") union representative, requested a meeting with the Human Resources Department of USPS to address Williams' treatment of him. *See* ECF 90-5, at 2. The meeting was scheduled for June 18, 2020. *See id.* A little over a month later, on July 28, 2020, NAPS informed Williams that it was appealing her modifications of Booze's "work hours and work location" as a "violation of Postal Service Policy." ECF 90-6, at 2. NAPS's letter also requested that Williams'

---

[5] Booze stated that he did not incur that additional commute time during days on which he only had a one-hour break because that would have left him with only "20 minutes" to eat and thus was "not enough time to go home and come back." ECF 85-7, at 13, 49:3–11.

[6] Shearer identifies that those lunches occurred on the following dates: "7/19/20, 7/26/20, 8/02/20, 8/16/20, 8/23/20, 8/30/20, 9/06/20, and 9/13/20." ECF 85-3, at 3 ¶ 9.

modifications be rescinded and Booze receive "a pay adjustment . . . to compensate" him "for out of schedule premium as he was not provided . . . notice" before those modifications. *Id.*

On August 5, 2020, Williams issued a letter placing Booze on immediate emergency off-duty status. *See* ECF 90-7, at 2. The letter describes three incidents over the course of three days—August 1, 2020 through August 3, 2020—as the alleged reason for the status change. *Id.* On August 1, the letter states that Booze failed to dispatch parcels by the end of his shift for an unacceptable reason, resulting in a "willful delay of mail." *Id.* The letter then states that on August 2, Booze incurred 1.58 hours of unauthorized overtime and, "when asked about [his] duties for that day," Booze was apparently unable to "articula[ate] what job functions [he] performed." *Id.* Finally, Williams' letter states that Booze indicated upon clocking out on August 3 that "there was no mail left in the building" but the next morning she "discovered outgoing mail" that should have been delivered the previous day. *Id.* The letter describes the emergency off-duty status as non-disciplinary, and Williams justified its imposition on the basis of Booze posing "an immediate and continuing risk to the orderly and proper functioning of the Postal Service." *Id.* Booze returned to work on August 10, 2020. *See* ECF 90-9, at 2. USPS later agreed to reimburse Booze for the pay he did not receive while on emergency off-duty status. *See id.*

On September 22, 2020, Booze received a diagnosis of post-traumatic stress disorder ("PTSD") from Dr. David Bonanno of Bonanno Mental Healthcare, "a collection of psychologists and psychotherapists in multiple states dedicated to providing evaluation and treatment of PTSD and Anxiety Disorders." ECF 90-10, at 2; ECF 85-2, at 7. Before the events giving rise to this litigation transpired, Booze also had a bulldog. ECF 85-7, at 10, 39:2–6. Booze stated that the bulldog "became an emotional support animal" for him "once going through the issue" at work. *Id.* Booze stated he had a consultation with a doctor where it was "discovered" that the bulldog

"helped [Booze's] health" and the bulldog "was then made an emotional support animal" for Booze. *Id.* at 39:11–18. In addition to the distress Booze claims he suffered from PTSD arising from his experience at work, he also seeks damages related to costs incurred from owning an emotional support animal. *See id.* at 10–11, 40:2–41:3.

### B.    Procedural History

Booze filed the operative complaint on July 11, 2022.[7] ECF 24. Defendants filed a motion to dismiss for failure to state a claim as to Counts II and III of the second amended complaint and for summary judgment as to Count I on September 15, 2022. ECF 29. On November 18, 2022, Judge Xinis held a hearing on Defendant's motion and issued an oral ruling and order denying it in full for the reasons stated on the record. ECF 37 (notice of hearing); ECF 38 (oral order).[8] On December 2, 2022, Defendant filed an answer to the second amended complaint and the parties began discovery. ECF 39 (answer); ECF 40 (scheduling order). The case was later reassigned to the undersigned. On January 17, 2025, the parties completed discovery. ECF 78 (modified scheduling order); ECF 79 (status report). Defendants filed a motion for summary judgment on April 4, 2025. ECF 85. That motion is now ripe for resolution.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether

---

[7] Booze originally filed this action pro se. *See* ECF 1. Judge Xinis appointed pro bono counsel for Booze on May 11, 2022. ECF 22.

[8] Defendants provide a transcript of the hearing as an exhibit attached to their motion for summary judgment. *See* ECF 85-8.

it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

"Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine factual dispute exists." *Progressive Am. Ins. Co. v. Jireh House, Inc.*, 608 F. Supp. 3d 369, 373 (E.D. Va. 2022) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986)). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

The Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam); *Scott v. Harris*, 550 U.S. 372, 378 (2007), and the Court "may not make credibility determinations or weigh the evidence," *Progressive Am. Ins. Co.*, 608 F. Supp. 3d at 373 (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007)). For this reason, summary judgment ordinarily is inappropriate when there is conflicting evidence because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002).

At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir.

7

2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 2003)). "The existence of a mere scintilla of evidence in support of the nonmoving party as well as conclusory allegations or denials, without more, are insufficient to withstand a summary judgment motion." *Progressive Am. Ins. Co.*, 608 F. Supp. 3d at 373 (citing *Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020)).

## III.    ANALYSIS

Booze brings his claims under the Rehabilitation Act. *See* ECF 24. "The Rehabilitation Act prohibits federal agencies from discriminating against its employees on the basis of disability." *Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019). It states that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination . . . by the United States Postal Service." 29 U.S.C. § 794(a).

Generally, "[i]n determining whether the Rehabilitation Act has been violated, courts apply the same standards as under the Americans with Disabilities Act." *Herkert v. Bisignano*, 151 F.4th 157, 164 (4th Cir. 2025); *Williams v. Virginia Polytechnic Inst. & State Univ.*, 451 F. Supp. 3d 467, 474 (E.D. Va. 2020) ("Thus, to establish liability under the ADA or Rehabilitation Act, a claim must demonstrate the same elements except causation under the Rehabilitation Act must occur 'solely by reason of' the disability." (quoting 29 U.S.C. § 794)). "And because the ADA, in turn, 'echoes and expressly refers to Title VII, and because the two statutes have the same purpose – the prohibition of illegal discrimination in employment – courts have routinely used Title VII precedent in ADA cases.'" *Herkert*, 151 F.4th at 164 (quoting *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir. 2001)).

Defendants argue that they are entitled to summary judgment on all of Booze's Rehabilitation Act claims. *See* ECF 85. The Court addresses each claim in turn.

## A.    Failure to Accommodate (Count I)

"To establish a prima facie claim of failure to accommodate under the Rehabilitation Act, a plaintiff must demonstrate that (1) she was a qualified person with a disability; (2) the employer had notice of the disability; (3) the plaintiff could perform the essential functions of the position with a reasonable accommodation; and (4) the employer nonetheless refused to make the accommodation." *Coats*, 916 F.3d at 337 (citing *Reyazuddin v. Montgomery Cnty.*, 789 F.3d 407, 414 (4th Cir. 2015)). The statute expressly contemplates that "reasonable accommodation" may include, among other things, "job restructuring" and "part-time or modified work schedules." 42 U.S.C. § 12111(9).

Defendants argue that Booze has failed to establish the fourth element—i.e., that Defendants refused to make a reasonable accommodation for Booze. *See* ECF 85-1, at 9. Here, the accommodation that Booze requested of his employer was "to work only fifty (50) hours per week due to his medical condition." ECF 85-2 (Booze's responses to Defendants' first set of interrogatories), at 5.[9] USPS granted Booze that accommodation, at least in a "strict sense." ECF 90, at 6; ECF 85-2, at 5 ("This accommodation request was granted."). However, Booze argues that "the accommodation was structured in such a way to impose on Mr. Booze unnecessary hassle and loss of personal time." ECF 90, at 6. Specifically, Booze contends that "he was forced to take two-hour mid-day breaks every Sunday" he worked.[10] *Id.*

---

[9] "When supporting or opposing a summary judgment motion, a party may rely on depositions, affidavits, admissions, and answers to interrogatories that would be admissible in evidence at trial." *Burwick v. Pilkerton*, 700 F. App'x 214, 216 (4th Cir. 2017) (citing Fed. R. Civ. P. 56(c)). It is uncontested that Booze's answer to the interrogatory about what accommodations he requested and what accommodations were provided to him is based on his personal knowledge. *Cf. id.* (noting that an attestation that the answers were based on plaintiff's personal knowledge was inconsequential where it was "obvious" that plaintiff's "answers—recounting her experience on the night in question—are based on her personal knowledge").

[10] In Judge Xinis' prior ruling denying Defendants' motion to dismiss, she indicated particular concern regarding the allegation that "the employer did not engage in any interactive process" with

9

At the outset, the Court observes that this failure-to-accommodate theory departs from what Judge Xinis contemplated at the motion to dismiss stage. There, Judge Xinis rightly reasoned that even if Booze worked under 50 paid hours per week, it could be inferred from the complaint that Williams, "in a sort of evil genius kind of way," could have effectively made Booze be at work for over 50 hours a week by requiring him to take two hours of lunch, depending of course on the total hours worked in any given week. ECF 85-8, at 4. At summary judgment, the Court has before it Booze's weekly timesheets, along with a declaration from Shearer about how to interpret those timesheets. *See generally* ECF 85-3. The timesheets reveal that in each week, from May 1, 2020 through November 1, 2020, Booze unquestionably never worked more than 50 hours, even counting the unpaid lunch breaks he was occasionally required to take during his Sunday shifts.

Important to this conclusion is Shearer's explanation of how to interpret the timesheets. Shearer describes the pay period between June 6, 2020 and June 12, 2020 as an example, an explanation which Booze does not contest and which the Court reviews here. For pay period 2020-13-1, Shearer explains that Booze worked a total of 43.03 hours, identified by code "052" on the sheet. ECF 85-3, at 3 ¶ 8; ECF 85-4 (time sheet for pay period 2020-13-1), at 13. The other codes to the left and right of "052" indicate what kind of hours constituted the total. *See* ECF 85-3, at 2–3 ¶ 7. Of the 43.03 hours worked in total, 5.02 of the hours were night work premium hours ("054"), 10.01 were Sunday premium hours ("072"), and 3.03 hours were straight time ("035"). ECF 85-3, at 3 ¶ 8; ECF 85-4, at 13.

---

respect to Booze's requested accommodation. ECF 85-8, at 48, 48:18–23. Booze no longer appears to advance the argument that Defendants failed to engage in the "interactive process"— indeed, the phrase does not appear once in his opposition to the motion for summary judgment. *See generally* ECF 90. Accordingly, the Court does not consider the argument further.

Shearer's analysis of the timesheets reveals eight times during the relevant period that Booze took a two-hour lunch, and one occasion where he took a 2.17-hour lunch. *See* ECF 85-3, at 3 ¶ 9. Shearer's observations correspond with Booze's review of the timesheets. *See* ECF 90, at 2 ("Between May 1, 2020 and November 1, 2020, on eight separate occasions Mr. Booze worked from 8:00 a.m. to 12:00 p.m., was off duty from 12:00 p.m. to 2:00 p.m., and then worked again from 2:00 p.m. until 6:00 p.m."). Similarly, the Court concludes that during pay periods where Booze took two-hour lunches, his total hours worked for the period—even counting the extra time beyond a single hour taken for lunch—never rose above 50 hours. *See* ECF 85-4, at 16–17 (43.94 hours worked total, plus 1.17 additional hours for lunch on 6/21, equals 45.11 hours); *id.* at 24–25 (40 hours worked total, plus 1.03 additional hours for lunch on 7/19, equals 41.03 hours); *id.* at 26–27 (35.12 hours worked total, plus 1.02 additional hours for lunch on 7/26, equals 36.14 hours); *id.* at 28–29 (42.45 hours worked total, plus 1 additional hour for lunch on 8/2, equals 43.45 hours); *id.* at 32–33 (41.84 hours worked total, plus 1.02 additional hours for lunch on 8/16, equals 42.86 hours); *id.* at 34–35 (40 hours worked total, plus 1 additional hour for lunch on 8/23, equals 41 hours); *id.* at 36–37 (41.6 hours worked total, plus 1.01 additional hours for lunch on 8/30, equals 42.61 hours); *id.* at 38–39 (40 hours worked total, plus 1 additional hour for lunch on 9/6, equals 41 hours); *id.* at 40–41 (40 hours worked total, plus 1.01 additional hours for lunch on 9/13, equals 41.01 hours).

Even viewing Booze's modified lunch schedule on Sundays as an implementation of the accommodation to work less than 50 hours per week,[11] Booze's time sheets reveal that his

---

[11] Booze cites no case law for the proposition that a failure to accommodate claim can succeed where the requested accommodation was granted in a "strict sense" but led to circumstances that undermined the purpose of the accommodation, or frustrated it. Although the Court can theorize how this argument can be relevant to an assessment of the reasonableness of an accommodation, Booze's case does not present this scenario. Instead, Booze's contention that his "accommodation

accommodation was not implemented in a way that undermined or effectively denied the accommodation. In practice, Booze's extended lunches did not result in him working more than 50 hours per week during the time period relevant to his complaint, even counting the additional time taken for lunch as part of the total hours worked. And to the extent Booze's argument turns on his modified work schedule reducing the amount of overtime he could earn[12]—either by working more than 50 hours or by working an extra Sunday premium hour—the Court observes that (1) Booze's requested accommodation was not related to working a certain number of overtime hours and (2) Booze was not *entitled* to work any number of overtime hours to begin with. *See* ECF 85-3, at 4 ¶¶ 11–12 (identifying Booze "as an EAS-17 non-bargaining Special Exempt employee" and explaining that "Special Exemploy employees are career employees who are exempt from the Fair Labor Standards Act" and "are eligible for additional pay if authorized to work over 8.5 hours on a scheduled day or any hours on a non-scheduled day"); ECF 85-6, at 2 (describing Booze's employment status with USPS).

The Court's conclusion that Booze's accommodation was implemented in a reasonable manner is bolstered by Fourth Circuit precedent concerning what constitutes a "reasonable" accommodation. "The burden of identifying an accommodation that would allow a qualified individual to perform the job rests with the plaintiff, as does the ultimate burden of persuasion with

_____

was structured in such a way to impose on [him] unnecessary hassle and loss of personal time," ECF 90, at 6, strikes the Court as far more relevant to Booze's retaliation claim than his failure to accommodate claim.

[12] *See* ECF 24–1, at 20–21 ¶ 64 ("Rather than agree not to schedule Mr. Booze more than 50 hours per week, Ms. Williams instead forced Mr. Booze to take extended unpaid two-hour lunches against his will, thereby reducing the amount of overtime he could earn."). Indeed, there is some dissonance between the requested accommodation of working less than 50 hours per week and a complaint about the implementation of that accommodation leading Booze to be unable to work *more* than his regularly scheduled 50-hour week (i.e., to earn overtime).

12

respect to demonstrating that such an accommodation is reasonable." *Lamb v. Qualex, Inc.*, 33 F. App'x 49, 59 (4th Cir. 2002). "A reasonable accommodation is one that is feasible or plausible." *Searls v. Johns Hopkins Hosp.*, 158 F. Supp. 3d 427, 435 (D. Md. 2016) (quoting *Reyazuddin*, 789 F.3d at 414). "The reasonableness of an accommodation depends on whether it 'enables the employee to perform the essential functions of the job in question.'" *Id.* (quoting *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995)). "An employer may reasonably accommodate an employee without providing the exact accommodation that the employee requested." *Reyazuddin*, 789 F.3d at 415. The only accommodation Booze requested was to work "only fifty (50) hours per week." ECF 85-2, at 5. Certainly, USPS had some discretion in how to effectuate that accommodation in light of its other business needs. *See* ECF 85-10 (declaration of Rhonda Williams), at 2 ¶ 3 ("In the summer of 2020, I changed Mr. Booze's schedule to better reflect the needs of the Postal Service. At that time, the area had modified the hours of carriers, so I modified the supervisor's hours as well.").

Booze now raises an argument that the implementation of his accommodation was unreasonable because, pursuant to federal law, "absent special circumstances 'breaks in working hours of more than 1 hour may not be scheduled in a basic workday' for a federal worker." ECF 90, at 6 (quoting 5 U.S.C. § 6101(a)(3)(F)). However, as Defendants point out, the statute Booze invokes does not apply to USPS or to its employees. *See* ECF 93, at 5. 5 U.S.C. § 6101 provides that "[e]xcept when the head of an Executive agency, a military department, or of the government of the District of Columbia determines that his organization would be seriously handicapped in carrying out its functions or that costs would be substantially increased," "breaks in working hours of more than 1 hour may not be scheduled in a basic workday." 5 U.S.C. § 6101(a)(3)(F).

13

However, "employee" has a particular meaning under that provision. *See id.* § 6101(a)(1). The term expressly "does not include an employee or individual excluded from the definition of employee in section 5541(2)" of Title 5, except as specifically provided under the paragraph. Under § 5541(2), "employee" only includes "an employee in or under an Executive agency," an "individual employed by the government of the District of Columbia," or "an employee in or under the judicial branch, the Library of Congress, the Botanic Garden, and the Office of the Architect of the Capitol." *Id.* § 5541(2). Thus, USPS is not an executive agency. *See id.* § 105 ("For the purpose of this title, 'Executive agency' means an Executive department, a Government corporation, and an independent establishment."); *id.* § 104(1) ("For the purpose of this title, 'independent establishment' means . . . an establishment in the executive branch (other than the United States Postal Service or the Postal Regulatory Commission) . . . ."). Accordingly, the Court does not find 5 U.S.C. § 6101 to bear on its analysis of Booze's failure to accommodate claim under the Rehabilitation Act.

Finally, Booze raises the argument that "in 2020, USPS twice refused to grant Mr. Booze's request for FMLA [Family Medical Leave Act] leave." ECF 90, at 6. Booze argues that "USPS's refusal to continue to grant Mr. Booze's FMLA request is unreasonable as a matter of law, considering that no conditions changed from the last approved request to the first refused request." *Id.* It is unclear what USPS's denial of Booze's prior FMLA request has to do with the failure to accommodate claim presently before the Court. *See* ECF 93, at 4 ("This assertion is out of place, was never raised in the operative complaint, and does not change the Court's analysis of Mr. Booze's failure to accommodate claim."). Booze's requested accommodation did not involve FMLA. *See* ECF 85-2, at 5. The Family Medical Leave Act, 29 U.S.C. § 2601 et seq., is distinct from the Rehabilitation Act, and distinct claims arise under its provisions. *See, e.g., Coats,* 916

14

F.3d at 332, 345. Booze did not include an FMLA claim in his second amended complaint, and he cannot now assert such a claim at the summary judgment stage. *See Sirmans v. Univ. of Maryland Med. Ctr.*, Civ. No. CCB-21-618, 2022 WL 596803, at *1 n.5 (D. Md. Feb. 28, 2022) ("[P]laintiffs cannot amend a complaint through opposition briefing." (citing *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184–85 (4th Cir. 2013))).

"Notably, the fourth element of the prima facie case requires that the employer *actually refuse* to make the reasonable accommodation." *Jennings v. Frostburg State Univ.*, 679 F. Supp. 3d 240, 284 (D. Md. 2023) (emphasis added). Here, Booze was granted the reasonable accommodation he requested, both on paper and in application. Accordingly, Defendants are entitled to summary judgment on Count I.

## B.    Disability Discrimination (Count II)

"Rehabilitation Act claims for discrimination are reviewed under the *McDonnell Douglas* burden-shifting framework."[13] *Coats*, 916 F.3d at 342 (citing *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006)). Under that framework, Booze has the initial burden of establishing a prima facie case of discrimination. *See id.* "To establish this prima facie case," Booze "must show that: (1) []he is disabled; (2) []he was otherwise qualified for the position; and (3) []he suffered an adverse employment action solely on the basis of h[is] disability." *Id.* (citing *Perry v. Comput. Scis. Corp.*, 429 F. App'x 218, 220 (4th Cir. 2011)). If Booze establishes a prima facie case, the burden of production shifts to Defendants "to provide a legitimate, nondiscriminatory reason for [their] conduct." *Id.* (citing *Perry*, 429 F. App'x at 220). If Defendants can do so, Booze "'bears the

---

[13] Booze argues under this framework that his disability discrimination claim should survive. *See* ECF 90, at 7.

ultimate burden of persuasion' and 'must show by a preponderance of the evidence that the proffered reason was a pretext for discrimination.'" *Id.* (quoting *Perry*, 429 F. App'x at 220).

### 1.    Adverse Employment Action

Defendants first argue that they are entitled to summary judgment on Count II because Booze has failed to establish that he suffered an adverse employment action. *See* ECF 85-1, at 11. In 2024, the United States Supreme Court held that a plaintiff "need not show a 'significant' change in working conditions to establish an adverse employment action." *Herkert*, 151 F.4th at 160 (quoting *Muldrow v. City of St. Louis*, 601 U.S. 346, 354–56 (2024)). The governing standard requires only "some 'disadvantageous' change in an employment term or condition." *Muldrow*, 601 U.S. at 347 (quoting *Oncale v. Sundowner Offshore Services*, Inc., 523 U.S. 75, 80 (1998)); *see id.* at 359 ("Muldrow need show only some injury respecting her employment terms or conditions. The transfer must have left her worse off, but need not have left her significantly so.").[14]

Booze's operative complaint summarizes the adverse employment actions he faced as follows: "having his accommodations denied, being forced to take extended unpaid lunches, having his confidential medical information leaked to his co-workers, being placed on unpaid leave, and being denied the proper appeal procedure under the Employee Labor Manual." ECF 24, at 13 ¶ 72; *see also* ECF 85-1, at 11. However, in his opposition to the motion for summary judgment, Booze limits the adverse actions he faced to (1) poor treatment by his superiors (specifically Williams), ECF 90, at 7, (2) being "forced to take two-hour lunches on Sundays throughout the summer of 2020," *id.* at 8, and (3) being "put on unpaid off-duty leave for several days on August 5, 2020," *id.* Because Booze does not advance arguments in opposition to

---

[14] Neither party cites to *Muldrow* in their briefing regarding adverse employment actions. *See generally* ECF 85-1; ECF 90; ECF 93.

summary judgment related to the alleged "leak" of his medical information or the appeal procedure he was provided, the Court does not address those contentions. *See Morgan v. City of Charlotte,* Civ. No. 322-3-KDBDCK, 2023 WL 4002524, at *15 (W.D.N.C. June 14, 2023) ("When a non-movant fails to respond to an argument in a motion for summary judgment she is deemed to have abandoned that claim or waived any opposition to the argument.") (collecting cases); *cf. Kairgadam v. Bell Atl. Corp.*, 46 F. App'x 194, 195 (4th Cir. 2002) (per curiam) ("Even an issue raised in the complaint but ignored at summary judgment may be deemed waived." (quoting *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 678 (1st Cir. 1995))).

First, the Court begins with Booze's argument that the treatment he received from his supervisors constituted an adverse employment action. *See* ECF 90, at 7. To establish an adverse employment action, *Muldrow* instructs that a plaintiff must show only "*some* 'disadvantageous' change in an employment term or condition," not a *significant* one. 601 U.S. at 347 (emphasis added) (citation omitted). There is no question that the alleged treatment Booze describes was hurtful and likely disadvantageous to him. However, it is the requirement that the disadvantageousness come by way of a "*change in an employment term or condition*" that presents an obstacle for Booze. The related context of Title VII hostile work environment claims informs the Court's conclusion that run-of-the-mill rude or flippant comments and criticisms directed at an employee's conduct at work will not generally be capable of amounting to a *change in a term or condition of employment* unless they are severe or pervasive. *See McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 408 (4th Cir. 2022) ("[T]he ultimate inquiry is whether the conduct is so 'extreme' that it "amount[s] to a change in the terms and conditions of employment."" (second alteration in *McIver*) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998))).

Here, Booze primarily points to Williams' discussion of Booze's medical accommodation letter in an email she sent to Hunter and Hamilton. *See* ECF 90, at 7 (noting that Williams "flippantly claimed that 'everybody' needs the accommodation Mr. Booze requested" and "gloat[ed] that his FMLA leave had been denied twice")[15]; ECF 90-3, at 2–3. Booze also points out that Williams claimed in that email that Booze "did not complete his tasks in a timely manner" and was generally dismissive of his letter. *Id.* Booze also emphasizes Hamilton's response to an email Booze sent, which characterizes Booze's email as "about feelings" instead of "the facts." ECF 90-4, at 2; ECF 90, at 7 ("His concerns about his treatment were further brushed off by Ms. Williams' superior, Mr. Hamilton, as constituting nothing but 'feelings' that required no consideration."). Booze's email recounts an interaction between himself and Hamilton during a July 20, 2020 meeting and explains why he was frustrated with Hamilton. *See* ECF 90-4, at 2–3.

"[A] plaintiff's claim of discrimination cannot be sustained on claims of 'mere inconvenience, annoyance, disappointment, or change, without a resulting effect on a plaintiff's employment conditions." *Olsen v. City of Richmond*, No. 3:23CV475 (RCY), 2025 WL 2656047, at *10 (E.D. Va. Sept. 16, 2025) (quoting *Grimes v. Dep't of Def.*, No. 1:24-CV-1164-MSN-IDD, 2025 WL 1334054, at *3 (E.D. Va. May 7, 2025)). Although the interactions Booze describes were likely unpleasant, no reasonable jury could conclude that they rise to the level of a change in a term or condition of Booze's employment with USPS. *See Muldrow*, 601 U.S. at 347; *see also Olsen*, 2025 WL 2656047, at *11 (concluding that although the occurrences were not "desirable," forcing a plaintiff "to attend a payroll training session for hourly employees," a "vindictive comment," a supervisor's "refusal to consider Plaintiff's pre-demotion accomplishments in her

---

[15] However, Booze does not appear to argue that the denial of his FMLA leave is the adverse action to which his disability discrimination claim is tied—only Williams' "gloating" about such denial. ECF 90, at 7.

interim performance evaluation," and "restrictions" on the plaintiff's "communication with customers" were not disadvantageous changes to employment terms or conditions); *Grimes*, 2025 WL 1334054, at *3 (concluding that "negative feedback, ignored complaints, reprimands, requests to cover shifts, denial of telework, and lack of performance evaluations" did not constitute adverse employment actions).[16]

Second, the Court considers Booze's contention that being "forced to take two-hour lunches on Sundays throughout the summer of 2020" is an adverse employment action. ECF 90, at 8. Under *Muldrow*, Booze's failure to show "significant" harm from his two-hour lunch breaks would not be decisive, but his failure to show that he suffered any harm at all would be. *See* 601 U.S. at 347. The additional lunch hour Booze was required to take on eight occasions did not diminish his job responsibilities, compensation, or benefits. And to the extent Booze describes the additional unpaid Sunday lunch hour as an hour of lost overtime work, the Court observes that overtime is not a term or condition of Booze's employment. *See* ECF 85-3, at 4 ¶¶ 11–12; *cf. Wilder v. Balt. City Police Dep't*, Civ. No. AMD-07-3090, 2009 WL 10727178, at *4 (D. Md. May 19, 2009) ("[O]vertime is not guaranteed to employees of the BPD. Overtime is not a term, condition, or benefit of Plaintiff's employment."); *Lindsey-Grobes v. United Airlines, Inc.*, Civ. No. GJH-14-00857, 2014 WL 5298030, at *7 (D. Md. Oct. 14, 2014) ("Plaintiff acknowledges that, at that time, there was only a 'possibility' that she would have even had the opportunity to work overtime. . . . Thus, . . . Plaintiff's claimed entitlement to overtime wages was based entirely

---

[16] Defendants argue that Booze should not be permitted to argue that he was discriminated against through the treatment of his supervisors because that "theory of discrimination was not raised in the Complaint." *See* ECF 93, at 6–7; *see also* ECF 85-8, at 9, 9:4–13 (noting that the allegations of adverse action in paragraphs 72 and 78 of the complaint were summarized there). Though Defendants make a compelling argument for exclusion, the Court nonetheless considers Booze's new theory and concludes that he fails to describe an adverse employment action.

19

on speculation. Such speculation cannot form the basis of an adverse employment action under these circumstances."). Neither does Booze point to his prediabetic condition as being exacerbated by the extra hour assigned for lunch.[17] *See Paterakos v. City of Chicago*, 147 F.4th 787, 797 (7th Cir. 2025) ("The assignment did not diminish Paterakos's job responsibilities, compensation, or benefits or make her otherwise worse off. While it shifted Paterakos's working hours by half an hour and required her to report to a different location, Paterakos has not identified any way that either of these minor changes in her working conditions objectively harmed her.").

In opposition, Booze argues that "this treatment was against federal law and caused [him] hardship through the abuse of his personal time." ECF 90, at 8. As discussed, the practice at issue here did not violate the federal law Booze invokes. *See supra* Section III.A. Booze's contention that the extra lunch hour infringed on his personal time constitutes the meat of his argument. Booze explains that, although he was not required to go home on his breaks, because "[t]he length of these breaks was longer than Mr. Booze needed to eat lunch, . . . he would drive home, spend time his house, and then drive back to work." ECF 90, at 6; ECF 85-7, at 14, 56:4–11. According to Booze, "[t]he time spent driving back and forth was essentially wasted time imposed on Mr. Booze by his employer." *Id.* A quote from Booze's deposition nicely summarizes the crux of his argument: "But, like I say, sitting around for one hour is different from sitting around for two." ECF 85-7, at 14, 56:9–11. Thus, the only "disadvantage" that came from the limited change to Booze's schedule is one he imposed on himself. *See* ECF 85-7, at 14, 56 ("I'm not required to go home, no, because a lunch break is pretty much ours . . . ."); ECF 90, at 8. No reasonable jury could conclude that time voluntarily spent driving to and from home during the additional lunch

---

[17] Moreover, as the Court has discussed, none of the weeks in which Booze took an additional hour for lunch were weeks in which he worked over 50 hours at USPS, which is the only disability-based limitation on his work that the record reflects. *See supra* Section III.A.

20

hour—"[a]bout 15 to 20 minutes" each way, ECF 85-7, at 12, 48:20–23—constituted a "'*disadvantageous*' change in an employment term or condition" for Booze. *Muldrow*, 601 U.S. at 347 (emphasis added).

Finally, the Court considers Booze's argument that he suffered an adverse employment action when "he was put on unpaid off-duty leave for several days on August 5, 2020." ECF 90, at 8. Defendants respond that Plaintiff was ultimately compensated for that leave, and they cite pre-*Muldrow* cases supporting the proposition that paid administrative leave for a short time is not an adverse action. ECF 85-1, at 12. This Court previously considered whether paid administrative leave constitutes an "adverse employment action" under Title VII. *See Kani-Goba v. Becerra*, Civ. No. 23-2442-BAH, 2025 WL 907511, at *6 (D. Md. Mar. 25, 2025). "Though *Muldrow* specifically addressed transfers as an adverse retaliatory action, lower courts around the country have recognized that *Muldrow*'s holding may extend to paid administrative leave as well." *Id.* (collecting cases). Even considering that Booze was eventually compensated for his off-duty leave, which lasted only five days, the Court cannot categorically agree with Defendants' argument that Booze's emergency off-duty leave does not constitute an adverse employment action.

      2.    Causation

Defendants further argue that they are entitled to summary judgment on Count II because Booze has failed to show that a reasonable juror could find Defendants took actions against him *because of* his disability. *See* ECF 85-1, at 16–17; *see also Coats*, 916 F.3d at 342. "Notably, the Rehabilitation Act requires that a plaintiff's disability be the 'sole' reason for the adverse employment action, rather than one of several motivating factors." *Jennings*, 679 F. Supp. 3d at 272 (citing *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468–69 (4th Cir. 1999)).

However, "establishing a causal relationship at the *prima facie* stage is not an onerous burden." *Smith v. CSRA*, 12 F.4th 396, 417 (4th Cir. 2021) (italics added) (alteration in original)

(internal quotation marks omitted) (quoting *Strothers v. City of Laurel*, 895 F.3d 317, 335 (4th Cir. 2018)). "A plaintiff may attempt to demonstrate that a protected activity caused an adverse action through two routes." *Id.* (quoting *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 123 (4th Cir. 2021)). First, a "plaintiff may establish the existence of facts that 'suggest[ ] that the adverse action occurred because of the protected activity.'" *Roberts*, 998 F.3d at 123 (quoting *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 123 (4th Cir. 2021)). Second, a "plaintiff may also establish that 'the adverse act bears sufficient temporal proximity to the protected activity.'" *Id.* (quoting the same). "The existence of relevant facts alone, or together with temporal proximity, may be used to establish a causal connection" between the activity and the action. *Id.*

Perhaps informed by the above discussion, "at the *prima facie* stage," the Rehabilitation Act's "requirement that a plaintiff demonstrate disability as the 'sole' basis for an adverse action is difficult to square with the notion that, in general, '[p]roving a prima facie case is a relatively easy burden.'" *Jennings*, 679 F. Supp. 3d at 272 (italics added) (internal quotation marks omitted) (quoting *Figueroa v. Geithner*, 711 F. Supp. 2d 562, 572–73 n.12 (D. Md. 2010)). It appears that "the Fourth Circuit has not recently addressed the contours of [this] prong in the *prima facie* context." *Id.* at 273 (italics added). Nevertheless, the conclusions of judges of this District and of other circuits suggest that "requiring a plaintiff to demonstrate that the adverse employment decision occurred solely by reason of [his] disability . . . imposes too great of a burden upon the plaintiff at this early stage of the *McDonnell Douglas* inquiry." *Id.* (quoting *Jones v. Potter*, 488 F.3d 397, 406 (6th Cir. 2007)). Rather, "[a]n inference that the adverse action occurred 'solely by reason of' the plaintiff's disability, in short, is *the result* of the *prima facie* test, not an element of it." *Id.* (emphasis in original) (italics added) (quoting *Jones*, 488 F.3d at 406). "If the law were otherwise, the *McDonnell Douglas* framework would serve virtually no purpose in cases brought

22

pursuant to the Rehabilitation Act and other single-motive statutes." *Id.* (quoting *Jones*, 488 F.3d at 406).

Here, Defendants argue that Booze's attempt at establishing a *prima facie* case fails to give rise to an inference of causation because Booze conceded in a sworn affidavit submitted during the United States Equal Employment Opportunity Commission's ("EEOC's") investigation that his disability was not a factor in either his lunch schedule change or his emergency placement on off-duty leave. *See* ECF 85-1, at 6, at 16–17; ECF 93, at 8. Indeed, in the portion of the affidavit devoted to Booze's schedule change, Booze was faced with the prompt, "Fully explain how and why you believe your medical impairment was a factor in this issue[.]" ECF 85-9, at 15. He responded, "I don't believe it was a factor in this issue." *Id.* In another section of the EEOC affidavit related to Booze's emergency suspension, he encountered the prompt, "Fully explain how and why you believe your medical impairment was a factor in this issue," to which he responded, "I don't believe that this was the issue." ECF 85-9, at 20.[18] In opposition to Defendants' argument, Booze does not reckon with the affidavit and instead points the Court towards Williams' July 16, 2020 email to Hunter and Hamilton, in which she stated that she read Booze's medical letter to

---

[18] Booze's argument that his "suspension was a continuation[] of Ms. Williams' disparate treatment of hi[m] as a result of his disability," ECF 90, at 8, which under the Rehabilitation Act must ultimately be the sole reason for the discrimination, is also undermined in this case by Booze's competing and overarching contention that "Ms. Williams issued a letter *in retaliation* placing Mr. Booze on immediate emergency off-duty status without pay for several days." ECF 90, at 3 (emphasis added); *see also id.* ("Ms. Williams' decision to place Mr. Booze on off-duty status was actually based on false pretenses and *was a direct retaliatory act* for Mr. Booze's human resources complaint and appeal of his schedule modification." (emphasis added)). Booze's EEOC affidavit also suggests that he viewed the leave and letter as having retaliatory motive. *See* ECF 85-9, at 20 ("None of the facts in the emergency placement letter were true, it was done to me out of spite, this was her way of getting back at me for going to HR about previous situations or talking to my union about previous situations."). As Judge Motz observed in *Figueroa*, "if the latter"— i.e., retaliation—"explained" the adverse action, "it would not support the specific claim" of discrimination "Plaintiff alleges in this case." 711 F. Supp. 2d at 575.

23

discuss "what every human being need[s]." ECF 90-3, at 2. Booze contends that Williams' comment implies her belief that Booze's disability "was not legitimate."[19] ECF 90, at 7.

Given Booze's statements in the record negating causation, the Court observes that even Booze's *prima facie* case rests on unstable ground. Booze frames his *prima facie* showing as resting on a single email from Williams, the majority of which is not concerned with Booze's medical letter or prediabetic status, but rather with his alleged work performance. *See* ECF 90-3, at 2–3 ("Mr. Booze do not take initiative to Supervise employees, I have to basically oversee him even as I type this . . . Mr. Booze is the only Supervisor that I have that fail to complete his 8 hours of his regular job duties on time." (errors in original)). Regardless, the Court need not decide whether Booze failed to establish a *prima facie* case, because even assuming he did, he fails to rebut Defendants' legitimate, non-discriminatory reasons for the actions they took against him.

As discussed, if a plaintiff establishes a *prima facie* case, "the burden shifts to the defendant to offer a 'legitimate, non-discriminatory reason for its employment action.'" *Figueroa*, 711 F. Supp. 2d at 572 (quoting *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959–60 (4th Cir. 1996)). "[I]f the defendant presents such a reason, the burden shifts back to the plaintiff to raise a genuine issue as to whether the proffered explanation was a pretext for unlawful discrimination." *Id.* (citing *Desmond v. Mukasey*, 530 F.3d 944, 962 (D.C. Cir. 2008)).

Even assuming the lunch schedule change was an adverse employment action,[20] Defendants have proffered evidence of a "legitimate, nondiscriminatory reason" for the change. *Coats*, 916 F.3d at 342. In Williams' declaration, she states that "[i]n the summer of 2020, [she]

---

[19] Although Booze advances an argument regarding temporal proximity and causation in the context of his retaliation claim, he does not advance such an argument regarding his discrimination claim. *See* ECF 90, at 7–9.

[20] The Court has concluded it was not. *See supra* Section III.B.1.

·changed Mr. Booze's schedule to better reflect the needs of the Postal Service." ECF 85-10, at 2. Specifically, "[a]t that time, the area had modified the hours of carriers, so [she] modified the supervisor's hours as well." *Id.* Williams further asserts that in her "experience as Manager, Customer Service it was commonplace for managers to change their supervisor's schedule and hours." *Id.*; *see also* ECF 85-1, at 7 ("Ms. Williams changed Mr. Booze's schedule so his hours, as a supervisor, matched the hours of the individuals (carriers) that he supervised."). This is the kind of legitimate, non-discriminatory reason contemplated by the second step of the *McDonnell Douglas* framework. *See Campbell v. Potter*, No. 1:04CV989, 2006 WL 1064182, at *4 (M.D.N.C. Apr. 20, 2006) ("Moreover, even if Plaintiff could establish a prima facie case of discrimination or retaliation, . . . the Court further concludes that Defendant has presented a legitimate, non-discriminatory reason for the Saturday scheduling. Specifically, the Court concludes that Plaintiff was required to work on Saturdays . . . in order to meet the genuine business needs of the Postal Service, due to the low number of 'subs' available, the unavailability of a trained 'sub' to cover Plaintiff's route, and Plaintiff's lack of seniority in the office."), *aff'd*, 201 F. App'x 961 (4th Cir. 2006).

And with respect to Booze's emergency placement in off-duty status, Defendants contend that "Mr. Booze was suspended on August 5, 2020 for failure to do one component of his job and for claiming unauthorized overtime when he was previously told not to [claim]." ECF 85-1, at 3; *see also* ECF 90-7, at 2 (identifying occurrences between August 1 and August 3 during which Booze allegedly failed to perform his duties appropriately at work).[21] "Job performance and

---

[21] The Court observes that Defendants do not expressly advance the argument, in their principal brief or reply, that the reasons in the letter are legitimate, non-discriminatory reasons for the unpaid leave. *See* ECF 85-1, at 17–21; ECF 93, at 8–9. Instead, Defendants appear to rest on the argument that unpaid leave was not an adverse action. *See* ECF 93, at 8–9 ("Mr. Booze only argues in his Opposition that his placement on unpaid leave for five days, for which he was compensated fully,

25

relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996). The question thus becomes whether Booze has "raise[d] a genuine issue as to whether the proffered explanation[s] [were] a pretext for unlawful discrimination." *Figueroa*, 711 F. Supp. 2d at 572.

Before analyzing whether Booze has done so, the Court pauses to draw guidance from case law on the subject of pretext. A plaintiff may create a reasonable inference of causation even after a defendant has met the burden of showing a legitimate, non-discriminatory reason for the adverse action by "presenting evidence that his employer's proffered reasons are not worthy of belief, thereby enabling the jury to infer that discrimination was the real reason for the adverse action, or by presenting evidence that discrimination was, in fact, the employer's real reason." *Monk v.*

---

constitutes retaliation. . . . As explained in Defendant's Motion for Summary Judgment, Plaintiff's placement on leave for a short period, where he was compensated fully for that time, without more, does not constitute an adverse action within the context of retaliation."). The Court is thus faced with the question of whether Defendants have truly proffered a legitimate, non-discriminatory reason for the unpaid leave.

As the Supreme Court has observed, to meet its burden in step two of the *McDonnell Douglas* framework, a "defendant must clearly set forth, *through the introduction of admissible evidence,* the reasons for the plaintiff's rejection." *Burdine,* 450 U.S. at 255 (emphasis added). "Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." *Id.* at 255–56. "The sufficiency *of the defendant's evidence* should be evaluated by the extent to which it fulfills these functions." *Id.* at 256 (emphasis added); *see also St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509 (1993) (describing the defendant's burden of production at this stage as the requirement to "introduce evidence which, *taken as true,* would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action" (emphasis in original)). Because Defendants have produced evidence containing such reasons in this record and pointed Booze to such evidence at least once in the memorandum in support of the motion for summary judgment, *see* ECF 85-1, at 3; ECF 90-7, at 2, the Court concludes that Defendants have met their burden to produce evidence of legitimate, non-discriminatory reasons for Booze's emergency placement on off-duty status.

26

*Potter*, 723 F. Supp. 2d 860, 881 (E.D. Va. 2010) (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000)), *aff'd sub nom. Monk v. Donahoe*, 407 F. App'x 675 (4th Cir. 2011). However, a "[p]laintiff 'may not recast an employer's legitimate, non-discriminatory reason or substitute his business judgment for that of the employer, but must instead meet each reason head on and rebut such reason.'" *Nzabandora v. Univ. of Va.*, No. 3:17-CV-00003, 2017 WL 4230509 (W.D. Va. Sept. 22, 2017) (quoting *Monk*, 723 F. Supp. 2d at 881), *aff'd sub nom. Nzabandora v. Rectors & Visitors of Univ. of Va.*, 749 F. App'x 173 (4th Cir. 2018).

This Court's decision in *Figueroa v. Geithner* offers an example of a case in which a plaintiff succeeded in rebutting each reason offered by the employer. There, Judge Motz considered whether a plaintiff, who was blind, had "presented sufficient evidence for a reasonable juror to find that all four of [the d]efendant's proffered reasons were either factually false or did not in fact motivate nonselection" of the plaintiff for a promotion. *Figueroa*, 711 F. Supp. 2d at 574. The plaintiff there offered evidence that each of the four reasons—plaintiff's alleged lack of experience in a certain tax project and in programming, his lack of leadership experience, and his application score (created by the interviewing panel itself)—was false, primarily through a comparison of the plaintiff's background with that of the applicant selected. *See id.* As Judge Motz observed, "proof that the proffered reasons were false may serve as circumstantial evidence of such discrimination." *Id.* (citing *Reeves*, 530 U.S. at 147).

Judge Motz also noted "two alternative (that is, non-proffered), non-discriminatory explanations for nonselection" of the plaintiff, including the "personal animosity" of one supervisor towards the plaintiff and retaliation for the plaintiff's EEOC activity. *Id.* at 575. As Judge Motz explained, "[i]f the former explained nonselection, Plaintiff would not have any Rehabilitation Act claim; if the latter explained nonselection, it would not support the specific

27

claim Plaintiff alleges in this case." *Id.* However, the Court concluded that there was "little direct evidence" from her deposition or elsewhere that the supervisor "actually acted out of a retaliatory motive or personal animosity." *Id.* Moreover, Judge Motz noted that in that case, "the blind applicant's nonselection resulted in keeping the position open for months." *Id.* at 576. "[W]here there is substantial evidence that the proffered reasons are unworthy of credence and the facts establishing the *prima facie* case are particularly probative of discriminatory intent, determining whether unlawful discrimination has occurred is best left to the fact finder at trial." *Id.*

On the contrary, *Vanyan v. Hagel* offers an example of a plaintiff who failed to produce evidence showing that the defendant's proffered reason was pretextual. 9 F. Supp. 3d 629 (E.D. Va. 2014). There, Judge Brinkema concluded that even if the plaintiff had been able to make out a *prima facie* case, the "plaintiff's claim would nonetheless fail because she [wa]s unable to rebut [the] defendant's legitimate, non-discriminatory reasons for her removal—namely, failing to maintain a regular work schedule after her leave expired." *Id.* at 639 (citing *Reeves*, 530 U.S. at 142). Concluding that there was "no clear evidence of pretext in the record," the defendant had "made a strong showing that continuing to operate" without the plaintiff "seriously hampered its ability to perform a critical mission" and that the "plaintiff's colleagues clearly understood her removal to be the result of her refusal to report for duty as opposed to [the] defendant's hostile attitude toward her disability." *Id.* at 639–40. Although the plaintiff attempted to argue that "fellow Instructors had similar attendance problems but were not punished in kind," Judge Brinkema observed that "the record gives no indication that their problems were of the same magnitude as hers, nor d[id] they stand accused of submitting inaccurate timesheets and being insolent with supervisors who enforced attendance rules." *Id.* at 640. And "[s]ignificantly, none of plaintiff's co-workers kept their positions after remaining AWOL for any length of time." *Id.*

28

Here, Booze fails to rebut Defendants' proffered reason for the Sunday lunch schedule change. Booze asserts in his opposition memorandum that Defendants have "not established an alternative *legitimate* non-discriminatory reason for . . . requiring that Mr. Booze take two-hour lunch breaks." ECF 90, at 8 (emphasis in original). But Booze does not discuss the specifics of Defendants' proffered reason of the carriers' hours changing, nor does he invoke evidence in the record to rebut that reason as "unworthy of credence." *See* ECF 90, at 8; *Figueroa*, 711 F. Supp. 2d at 576.

Booze refers to his discrimination claim as a "disparate treatment" claim. *E.g.*, ECF 90, at 7. For such claims, "[a] plaintiff may support an inference that the employer's stated reasons were pretextual, and the real reasons were prohibited discrimination or retaliation, by citing the employer's better treatment of similarly situated employees outside the plaintiff's protected group." *Jennings*, 679 F. Supp. 3d at 279. "A similarly situated employee is one who is 'similar in all relevant respects' to plaintiff." *Id.* (quoting *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010)). "Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Haywood*, 387 F. App'x at 359 (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). Booze, however, has advanced no arguments—and points to no evidence—that other similarly situated employees existed in his case.

Booze makes a stronger attempt at rebuttal with respect to the reasons suggested for off-duty leave but nonetheless fails to generate a genuine dispute of material fact. Booze argues that "Williams' decision to place Mr. Booze on off-duty status was actually based on false pretenses . . . evidenced by a July 31, 2020 email – that went unanswered – wherein Mr. Booze asked Mr.

Hamilton what he should do in the event that work was not completed at the end of his shift and required additional time." ECF 90, at 3 (citing Exhibit G, at ECF 90-8). Booze's email, sent to Hamilton on Friday, July 31, 2020 at 2:24 p.m., includes the subject line, "Instructions in case of code 35 on Sundays" and asks "what are my instructions if I do get into a situation where I may need extra time what do you want me to do?" ECF 90-8, at 2. Booze contends that the "email shows . . . that [he] had been set up to fail by being given too much work and not enough time to complete it, and that the suspension was intended to punish Mr. Booze for his prior reporting acts." ECF 90, at 9.

Booze attempts to place great weight on a single, unanswered email. But a plaintiff "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985) (citing *Barwick v. Celotex Corp.*, 736 F.2d 946, 963 (4th Cir. 1984)). In order to reach the conclusion Booze asserts, a factfinder would have to engage in a great degree of speculation. First, a factfinder would have to speculate that Booze was "given too much work," because Booze points to no evidence in the record (not even his own testimony) that he was overworked at USPS. Second, a factfinder would have to speculate that Hamilton intentionally refrained from responding to Booze's email such that Booze would end his workday before tasks were completed and Williams would initiate his emergency placement on off-duty status.[22] That kind of inference-building is incapable of creating a genuine dispute of material fact.

Booze also contends that "[f]urther evincing the unwarranted off-duty placement" is the fact that "USPS later agreed to reimburse Mr. Booze for the pay he did not receive while on

---

[22] Booze's materials do not indicate that he deposed Williams or Hamilton, and the record before the Court contains no deposition testimony from either individual.

suspension." *Id.* (citing Exhibit H, at ECF 90-9). Again, however, layers of inferences are required to even undermine Defendants' proffered explanation for the off-duty leave and its reimbursement. To be sure, that USPS issued a pay adjustment to compensate Booze for the thirty-two hours of work lost during his emergency off-duty status is probative (although certainly not conclusive) of the inference that Booze was improperly placed into that status as it sits among several possible reasons why a company may later compensate an employee's unpaid leave. But even assuming the inference of wrongdoing is a strong one, a second inference is required to reach the conclusion Booze seeks. A factfinder must additionally infer that the reason for improper placement in emergency off-duty status was Williams' discriminatory animus and not, for example, a misapplication of the manual provisions she invoked.[23] The unanswered email and Booze's ultimate compensation for his leave, without more, do not raise a genuine issue about whether the non-discriminatory reasons offered by Defendants for the failure to promote Plaintiff were a pretext to mask intentional discrimination on the basis of Booze's prediabetic status.

Because Booze fails to plausibly support his allegations that Defendants' "reasons are false, much less that all of them are a pretext for discrimination," no reasonable factfinder could conclude that Defendants' offered reasons for the lunch schedule change and off-duty status were pretextual. *Baldwin v. England*, 137 F. App'x 561, 564 (4th Cir. 2005). Accordingly, Defendants are entitled to summary judgment on Count II.

---

[23] To eliminate the need for speculation, Booze could have sought in discovery or otherwise produced USPS's Employee and Labor Relations Manual, which is cited in Williams' letter as containing the governing provisions for Booze's emergency placement in off-duty status. *See* ECF 90-7, at 2. The manual is not in the record before the Court.

## C.    Retaliation (Count III)

To prevail on a retaliation claim under the Rehabilitation Act, "a plaintiff must either offer sufficient direct and indirect evidence of retaliation, or proceed under [the] burden-shifting method." *Smith v. CSRA*, 12 F.4th 396, 416 (4th Cir. 2021) (quoting *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 577 (4th Cir. 2015)). "In order to establish a prima facie case of retaliation, a plaintiff must prove three elements: (1) that []he engaged in a protected activity; (2) that h[is] employer took an adverse employment action against h[im]; and (3) that there was a causal link between the two events." *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405–06 (4th Cir. 2005).

Booze contends that he engaged in protected activity when he "(1) requested FMLA leave and workplace accommodations for his diagnosed prediabetic condition; (2) requested a meeting with a human resources representative regarding Ms. Williams' harsh treatment of him, including his need for health accommodations; and (3) sought assistance from his union, NAPS, to oppose the change in his Sunday schedule made in the name of 'accommodating' his disability." ECF 90, at 9. Further, he contends that USPS took adverse employment action against him "when it suspended him without pay for several days."[24] *Id.* Booze argues that the causal link between the protected activities and that adverse action is "evidenced by the temporal closeness of all of these actions." *Id.*

Defendants first argue that USPS took no adverse employment action against Booze for purposes of his retaliation claim. *See* ECF 85-1, at 18. Defendants' argument fails. As the Fourth Circuit recently explained, "courts have employed a distinct standard for identifying cognizable adverse actions in the retaliation context." *Herkert*, 151 F.4th at 165. "The anti-retaliation

---

[24] Booze does not argue in his opposition that the introduction of two-hour lunch breaks into his Sunday schedule constituted retaliation. *See* ECF 90, at 8–10; ECF 93, at 8.

32

provision," as contrasted with the anti-discrimination provision of Title VII, "is not tied to the terms and conditions of employment, and so may 'include a wider variety of conduct within its scope.'" *Id.* (quoting *Laurent-Workman v. Wormuth*, 54 F.4th 201, 213 (4th Cir. 2022)). Although the retaliation standard for an adverse action, "sometimes referred to as a 'significant harm' requirement, [has] some linguistic overlap with the heightened threshold of harm rejected by *Muldrow . . . Muldrow*'s analysis of discrimination claims leaves it unchanged." *Id.* at 166. In short, the question of whether a plaintiff has shown an adverse action for purposes of a retaliation claim is whether the action "might have dissuaded a reasonable worker from pursuing a discrimination complaint." *See id.* (internal quotation marks omitted); *see also Muldrow*, 601 U.S. at 348 (observing that the anti-retaliation applies only when a "retaliatory action is 'materially adverse,'" or "serious enough to 'dissuade[ ] a reasonable worker from making or supporting a charge of discrimination'" (citations omitted)).

Defendants do not appear to engage at all with the standard for adverse employment actions specific to retaliation claims. *See* ECF 85-1, at 18–19. Instead, Defendants advance the same arguments related to adverse actions as they did with respect to Count II. *See id.*; ECF 93, at 8–9. However, the standards for these claims are not identical. And even under the standard applicable to Count II, the Court concluded that Booze's emergency placement on off-duty status may still constitute an adverse employment action. *See supra* Section III.B.1. Certainly, under the less onerous standard for adverse actions in the retaliation context, placement on unpaid leave, even for a short period of time, is "serious enough to 'dissuade[ ] a reasonable worker from'" engaging in a protected activity. *Muldrow*, 601 U.S. at 348 (citation omitted); *see also Thomas v. City of Annapolis*, 851 F. App'x 341, 350 (4th Cir. 2021) (considering whether plaintiff had established a *prima facie* case of retaliation regarding the "causal relationship between the adverse employment

actions taken against him, namely *being placed on leave without pay* and later terminated, and his· filing of employment discrimination charges" (emphasis added)).

As opposed to other claims, the inference of retaliatory motive arising from Booze's *prima facie* case is on more stable ground. *See* ECF 90, at 9 ("The causal link between the two is. evidenced by the temporal closeness of all of these actions. . . . On July 28, 2020, Ms. Williams was notified of Mr. Booze's appeal of her change of his Sunday schedule. A week later, on August 5, 2020, she issued the off-duty notice, effective immediately." (internal citation omitted)); *Thomas v. City of Annapolis*, 851 F. App'x 341, 350 (4th Cir. 2021) ("We have previously held that four months between the protected activity and adverse employment action is sufficient to establish a causal connection at the prima facie stage." (citing *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994))). However, for the same reasons articulated above, Booze has not rebutted Defendants' evidence of the legitimate, non-discriminatory reasons for Booze's emergency placement on off-duty status. *See supra* Section III.B.2. "Once an employer has provided a non-discriminatory explanation for its decision, the plaintiff cannot seek to expose that rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it." *Hux v. City of Newport News*, 451 F.3d 311, 315 (4th Cir. 2006). Rather, "[t]o survive summary judgment, Plaintiff must present the court with evidence of pretext." *Leverette v. Louis Berger U.S., Inc.*, No. 3:19-CV-00268-SAL, 2022 WL 44812, at *9 (D.S.C. Jan. 5, 2022). Because Booze has not offered evidence from which a reasonable jury could conclude that the reasons relied on by Defendants in placing him on off-duty status were false or otherwise pretextual, Defendants are entitled to summary judgment as to Count III as well.

34

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion for summary judgment is granted.  The Clerk will be directed to enter judgment in favor of Defendants and against Booze, and to close the case.

A separate implementing order will issue.


Dated: <u>May 14, 2026</u>                                             _____/s/_____

Brendan A. Hurson
United States District Judge